FILED
2006 Jun-12  AM 10:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **TERESA R. MCCORD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-06-S-419-M** |
| | ) | |
| **AMERICAN FAMILY LIFE** | ) | |
| **ASSURANCE COMPANY OF** | ) | |
| **COLUMBUS, *et al.,*** | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM OPINION

Plaintiff, Teresa R. McCord, commenced this action in the Circuit Court of Marshall County, Alabama. Her complaint asserted two state law claims against two defendants: American Family Life Assurance Company of Columbus ("Aflac"), the company from which she purchased a life insurance policy that, plaintiff believed, would provide coverage on the life of her husband; and, Dewayne Ray, the agent who sold her the policy.[1] Plaintiff claimed that, despite her filing of a timely claim following her husband's death, defendants wrongfully refused to pay her the $25,000 benefit due to her under the policy. The first count in plaintiff's state-court complaint asserts that "Defendants have refused to pay the Plaintiff the amount due under the

---

[1]*See* Complaint, appended to doc. no. 1 (Notice of Removal).

life insurance policy."[2]  Plaintiff demands judgment on this claim in the amount of $25,000, plus interest and costs.  In the second count of her complaint, plaintiff claims that "Defendants breached the agreement to insure the life of the Plaintiff's husband in the amount of $25,000," and she demands judgment on this claim "in such an amount of compensatory and punitive damages as a jury deems reasonable and may award, and costs."[3]

## PROCEDURAL BACKGROUND

Aflac removed the case to this court, asserting jurisdiction based on satisfaction of the requirements of the diversity statute, 28 U.S.C. § 1332(a)(1).[4]  Although Aflac is a Nebraska corporation with its principal place of business in the State of Georgia, both plaintiff and defendant Dewayne Ray are residents of Alabama.  Thus, there is not complete diversity of citizenship.  *See, e.g., Palmer v. Hospital Authority of Randolph County*, 22 F.3d 1559, 1564 (11th Cir.1994) (citing *Strawbridge v. Curtiss*, 3 Cranch (7 U.S.) 267, 2 L. Ed. 435 (1806), and holding that jurisdiction under 28 U.S.C. § 1332 requires "complete diversity": that is, the citizenship of every plaintiff must be diverse from the citizenship of every defendant).  Aflac seeks to overcome

---

[2]*See id.* at Count One.

[3]*Id.* at Count Two.

[4]Doc. no. 1 (Notice of Removal).  28 U.S.C. § 1332(a)(1) states, in relevant part, that "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

this impediment to removal by asserting that plaintiff fraudulently joined Dewayne Ray as a defendant for the purpose of defeating this court's diversity jurisdiction. *See, e.g.*, *Wilson v. Republic Iron and Steel Co.*, 257 U.S. 92, 97 (1921) (holding that a diverse defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy").

Aflac also asserts that the required amount in controversy for diversity jurisdictional purposes — $75,000, exclusive of interests and costs[5] — is satisfied because, in Count Two of the complaint filed in state court, plaintiff demanded judgment for $25,000, *plus* such "an amount of compensatory *and punitive damages as a jury deems reasonable and may award, and costs.*"[6]  Aflac claims that plaintiff's request for "punitive damages" elevates the amount in controversy above the $75,000 jurisdictional threshold.

This court questioned the propriety of Aflac's removal in an order entered on March 3, 2006,[7] and ordered plaintiff to respond to the allegation that Dewayne Ray had been "fraudulently joined" as a defendant for the purpose of defeating diversity jurisdiction.  This court also questioned whether Aflac had met its burden of proving, by a preponderance of evidence, that the amount in controversy requirement had been

---

[5]*See supra* note 4.

[6]Complaint, at 2-3 (emphasis supplied).

[7]Doc. no. 3.

satisfied, and ordered Aflac to show cause why the case should not be remanded to state court.  Plaintiff subsequently filed a motion to remand,[8] arguing that Dewayne Ray had *not* been fraudulently joined and, thus, complete diversity of citizenship is lacking, and there is no federal jurisdiction over her state law claims.  This court need not reach the fraudulent joinder issue,[9] because remand is warranted on the basis of Aflac's failure to prove the jurisdictional amount in controversy.

### DISCUSSION

"When jurisdiction is premised on the diversity of the parties, the district court is obligated to assure itself that the case involves the requisite amount in controversy."  *Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000) (citations omitted).[10]  Further, the court must focus upon the amount that was in controversy *on the date the case was removed from state court.  See, e.g., Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1097 n.13 (11th Cir. 1994) ("Jurisdictional facts are assessed on the basis of plaintiff's complaint *as of the time of removal*.")

---

[8]Doc. no. 4.

[9]*But see* note 17 *infra*, particularly the last sentence thereof.

[10]An "Article III court must be sure of its own jurisdiction before getting to the merits" of any action.  *Ortiz v. Fiberboard Corp.*, 527 U.S. 815, 831 (1999) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 88-89 (1998)); *see also, e.g., Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) (stating that "a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises").  Further, "a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings."  *University of South Alabama v. American Tobacco Co.,* 168 F.3d 405, 410 (11th Cir. 1999).

(emphasis in original) (citations omitted); *see also*, *e.g.*, *Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 972 (11th Cir. 2002) (same) (citing *Poore v. American-Amicable Life Insurance Co. of Texas*, 218 F.3d 1287, 1289-91 (11th Cir. 2000)); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir.1989) (same).

Aflac therefore bears the burden of proving that the requisite jurisdictional amount was in controversy on the date of removal because, whenever a plaintiff "fails to specify *the total amount* of damages demanded" in a state court complaint — either by demanding a specific sum in compensatory damages, but an indefinite amount as punitive damages, or by not designating any amounts at all (*e.g.*, "compensatory and punitive damages in such amounts as the jury may award") — then "a defendant seeking removal based on diversity jurisdiction must prove by a preponderance of the evidence that the amount in controversy exceeds the $75,000 jurisdictional requirement." *Leonard*, 279 F.3d at 972 (emphasis supplied) (citing *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1356-57 (11th Cir. 1996) ("[W]here a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the [$75,000] jurisdictional requirement."), *overruled on other grounds by Cohen v. Office Depot, Inc*., 204 F.3d 1069 (11th Cir. 2000)).  Aflac has failed to satisfy that burden.

Aflac made the following assertions concerning the amount allegedly in controversy in the notice of removal filed in this court:

> In the Complaint, the Plaintiff alleges breach of contract. Although the Plaintiff does not specifically allege the amount of damages, the Plaintiff's Complaint does not limit her demand for recovery. Rather, the Plaintiff demands the $25,000 contract amount, plus compensatory and punitive damages as a jury deems reasonable and may award. . . . The Alabama Supreme Court holds that mental anguish damages are available in breach of contract actions "[w]here the contractual duty or obligation is so coupled with matters of mental concern or solicitude, or with the feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering . . . ." *Sexton v. St. Clair Fed. Sav. Bank,* 653 So. 2d 959, 960 (Ala. 1995). While Defendant Aflac denies that it breached any contract with the Plaintiff and denies that the Plaintiff is entitled to any damages including damages for mental anguish and suffering, the Plaintiff has included in her Complaint a request for compensatory and punitive damages. Accordingly, based on the allegations in the Plaintiff's Complaint, the Plaintiff seek [sic] damages in excess of the jurisdictional limit of this Court.[11]

By the date of responding to this court's show cause order, however, Aflac apparently realized this argument would be unpersuasive, because its attorney now concedes that he "has examined Alabama case law regarding damages available in a breach-of-contract action and has not found [any cases] in which mental anguish and/or punitive damages were awarded in an action for breach of a life insurance policy."[12]

Even so, Aflac still maintains the requisite jurisdiction amount was in

---

[11]Notice of Removal, at 4-5.

[12]Doc. no. 6 (Aflac's response to the Show Cause Order), at 1.

controversy on the date of removal, and invites this court to construe Count Two of plaintiff's complaint as a claim for bad faith refusal to pay a valid insurance claim, rather than — as is clearly stated on the face of the complaint — a claim for breach of contract.   Aflac points out that Count Two includes a demand for punitive damages, and concedes that punitive damages are not recoverable in an action for breach of a life insurance contract.[13]   Aflac then notes that punitive damages *are* recoverable in a bad faith claim under Alabama law,[14] and states that it "*must assume that Plaintiff is placing it* [and, presumably, this court] *on notice that she is claiming bad faith.*"[15]   Aflac then cites cases from the appellate courts of Alabama upholding verdicts for compensatory and punitive damages in excess of $75,000 on bad faith claims, including claims involving a defendant's bad faith failure to pay life insurance proceeds.   Aflac thus asserts the jurisdictional amount was in controversy on the date of removal, based upon the punitive damages potentially recoverable on plaintiff's purported bad faith claim.   This court does not find that argument persuasive, however, as it cannot reasonably be concluded that plaintiff's complaint actually does assert a bad faith claim.

---

[13]*See e.g., Nolin v. Dismukes,* 554 So. 2d 1019, 1020 (Ala. 1989) ("A claim for breach of contract will not support an award of punitive damages.") (citation omitted).

[14]*See, e.g., National Insurance Ass'n v. Sockwell,* 829 So. 2d 111, 141 (Ala. 2002).

[15]Doc. no. 6, at 2 (emphasis supplied).

Under Alabama law, an actionable tort of bad faith arises for an insurer's intentional refusal to pay an insurance claim where there is either no lawful basis for the refusal, coupled with actual knowledge of that fact, or an intentional failure to determine whether there was any lawful basis for such refusal. *See Chavers v. National Security Fire & Casualty Co.*, 405 So. 2d 1, 7 (1981). The plaintiff in a so-called "bad faith refusal" case has the burden of proving:

(a)    an insurance contract between the parties and a breach thereof by the defendant;

(b)    an intentional refusal to pay the insured's claim;

(c)    the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);

(d)    the insurer's actual knowledge of the absence of any legitimate or arguable reason;

(e)    if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

In short, plaintiff must go beyond the [mere] showing of nonpayment and prove a *bad faith* nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.

*National Security Fire & Casualty Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982) (emphasis in original). The language of Count Two in plaintiff's state court

complaint touches upon none of these elements, other than the alleged existence and

breach of an insurance contract.  The pertinent portions of Count Two state that:

> 2.   During the month of March, 2002, the Defendant, Dewayne Ray, approached Plaintiff, Teresa R. McCord, at her place of business in Guntersville, Alabama for the purpose of selling her and her family life insurance.  The plaintiff agreed to purchase and the Defendants agreed to sell to the Plaintiff life insurance covering herself, her children and her husband, Jerry Wayne McCord.
>
> 3.   The defendants referred to the life insurance policy insuring the life of the Plaintiff's husband for the amount of $25,000.00 as a spouse rider.  Subsequent to the parties' agreement, the Plaintiff paid the agreed premiums for all the life insurance issued to her family, including the policy insuring the life of her husband.
>
> 4.   On or about the 8th day of August, 2004, Jerry Wayne McCord died.
>
> 5.   The Plaintiff, Teresa R. McCord, gave prompt notice to the Defendants and made a claim for the sum of $25,000.00 under the above described AFLAC policy.  The Defendants initially acknowledged the life insurance policy but then claimed that a policy was not issued and did not exist on the life of the Plaintiff's husband.
>
> 6.   *The Defendants breached the agreement to insure the life of the Plaintiff's husband in the amount of $25,000.*
>
> WHEREFORE, plaintiff demands judgment against defendants in such an amount of compensatory and punitive damages as a jury deems reasonable and may award, and costs.[16]

Plaintiff thus states no facts indicating that the failure to pay her claim was

---

[16]Complaint, at Count Two (emphasis supplied).

intentional; that defendants had no legitimate or arguable reason for the decision to deny the claim; that defendants had actual knowledge that there was no legitimate or arguable reason; or that defendants intentionally failed to determine whether there was a legitimate or arguable reason to refuse the claim.  In short, plaintiff alleges only an *ordinary* failure to pay (breach of) her contract for life insurance, not a *bad faith* refusal to pay.  *See Singleton v. State Farm Fire & Casualty Co.,* – So. 2d – , 2005 WL 3007974, at *2 (Ala. Nov. 10, 2005) ("'Bad faith . . . is not simply bad judgment or negligence.  It imports a dishonest purpose and means a breach of known duty, *i.e.,* good faith and fair dealing, through some motive of self-interest or ill will.'") (quoting *State Farm Fire & Casualty Co. v. Slade,* 747 So. 2d 293, 303-04 (Ala. 1999) (in turn quoting *Gulf Atlantic Life Insurance Co. v. Barnes,* 405 So. 2d 916, 924 (Ala. 1981))); *Bowen,* 417 So. 2d at 182-83 (holding that the plaintiff's allegations of "a *willful or wanton* failure to pay after he had fully complied with the contractual provisions, and of the false representations that valid claims would be paid knowing such statements were false" were sufficient to state a claim for bad faith) (emphasis supplied).[17]

---

[17]The language in plaintiff's other pleadings bolsters this conclusion.  In her briefs, plaintiff appears to characterize her claim against defendant Ray as one for *negligent* failure to *procure* insurance coverage on the life of her deceased husband.  *See* doc. no. 5 (plaintiff's brief in support of motion to remand), at 7 ("Dewayne Ray breached his agreement with the Plaintiff by failing to acquire for Plaintiff an insurance policy containing the coverage that he agreed to sell and Plaintiff agreed to purchase."); *id.* at 8 ("Dewayne Ray did not exercise [the requisite] skill, care and diligence

In sum, plaintiff's complaint cannot reasonably be construed as alleging a claim for bad faith. Instead, the claims are more correctly construed as ones for breach of contract. As Aflac acknowledges, Hornbook Alabama law establishes that neither punitive damages, nor damages for mental anguish, pain, and suffering, may be recovered for a breach of contract. Aflac has presented no other evidence that the amount in controversy will, more likely than not, exceed $75,000, exclusive of interest and costs. In fact, Aflac has produced no evidence to indicate that the amount in controversy will exceed $25,000, the sum due under the terms of the alleged life insurance policy. Accordingly, Aflac has failed to meet its burden of proving satisfaction of the amount in controversy by a preponderance of the evidence, and there is no federal jurisdiction of plaintiff's claims.

## CONCLUSION

Based on the foregoing, this case will be remanded to the Circuit Court of

---

in effecting coverage for the Plaintiffs, or else the life of the Plaintiff's husband would have been insured. Defendant Dewayne Ray clearly breached the duty he owed to Plaintiff . . . ."). *See also* doc. no. 18 (plaintiff's response to Dewayne Ray's motion to dismiss), at 1 ("Count II alleges the breach of a separate agreement between the Plaintiff and Defendants."); *id.* at 2 ("The claim against Ray is for his failure to obtain the insurance coverage he agreed to sell and the Plaintiff agreed to purchase. Plaintiff contends that this failure is a breach of the duty imposed upon Defendant Dewayne Ray as an insurance agent and that he is therefore personally liable for the lack of coverage."). These passages support the conclusion that plaintiff is *not* attempting to allege a claim for intentional bad faith conduct. *See Singleton, supra,* at *2 ("'Bad faith . . . is not simply bad judgment or negligence.") (citations omitted). These same allegations also clearly indicate that Dewayne Ray was not "fraudulently joined" for the purpose of defeating diversity jurisdiction.

Marshall County, Alabama, from which it was removed.[18]  An appropriate order will be entered contemporaneously herewith.

DONE this 12th day of June, 2006.

_____
United States District Judge

---

[18]Further, as there is no federal jurisdiction, this court will not rule on any of the pending motions.  *See* doc. no. 4 (plaintiff's motion to remand); doc. no. 8 (Aflac's motion to dismiss or, in the alternative, to compel arbitration); doc. no. 16 (Dewayne Ray's motion to dismiss).